[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has appealed from an assessment of damages by the defendant for the taking of a portion of its property, together with certain rights, as shown on a map entitled: "TOWN OF WETHERSFIELD MAP SHOWING LAND ACQUIRED FROM EARLY WETHERSFIELD BLDG. CO. BY THE STATE OF CONNECTICUT ROUTE 99 HIGHWAY IMPROVEMENTS SCALE 1" = 40' JUNE 1990 ROBERT W. GUBALA TRANSPORTATION CHIEF ENGINEER — BUREAU OF HIGHWAYS." A copy of the taking map, revised to November 15, 1991, was introduced into evidence as Exhibit A. A description of the take appears in Schedule A attached to and made a part of the complaint.
The parties stipulated that the date of the partial taking was July 30, 1992, and that damages as assessed by the defendant in the amount of $6,600 were deposited by the defendant with the clerk of the superior court.
The subject property is at the southwest corner of the Silas Deane Highway, also known as Route 99, and Maple Street, also known as Route 3, in the southern part of the Town of Wethersfield. The Town of Wethersfield is south of Hartford. It is accessible from the interstate highway system and it is well served by public CT Page 3294 transportation. It is primarily residential, but commercial districts lie along both the Silas Deane Highway and the Berlin Turnpike, both major north/south thoroughfares. The intersection of the Silas Deane Highway and Maple Street is an excellent office location.
The subject property is 0.64 acres in area and has frontage of 182 feet along the Silas Deane Highway and 285.19 feet along Maple Street. It is improved with a one and two storey office building in which there are seven rental areas. About 22,000 square feet of the area is paved with amesite and there are 41 parking spaces provided. Other improvements include shrubs, retaining walls, curbing, fence, concrete steps and concrete walks. The subject property is above street grade and slopes up to the west from the Silas Deane Highway. Access to the site of the subject property is by means of a mutual driveway from the Silas Deane Highway. There is no access from Maple Street. The appraisers called by the parties as witnesses agreed that the highest and best use of the subject property both before and after the taking was for an office building.
The partial taking consists of an area of 0.005 of an acre at the northeast corner of the subject property, or 218 square feet, more or less, out of the 27,878 square feet, more or less, which existed before the taking. Also taken were a right to construct a retaining wall 54 feet, more or less, in length; a right to grade within an area of 0.004 of an acre, more or less; a right to construct a concrete curb 49 feet, more or less, in length; and a right to construct a sidewalk within an area of 15 square feet; more or less. These four rights terminate upon completion of the work by the State of Connecticut. Included within the taking area three yew trees, concrete steps and 175 square feet, more or less, of pavement. Some concrete sidewalk, curbing and retaining wall will be removed but replaced.
After the partial take, the subject property will consist of 0.635 of an acre in area, or 27,660 square feet, more or less. It will have frontage along the Silas Deane Highway of 167 feet, more or less, frontage along Maple Street of 271.19 feet, more or less, and a curving line connecting the two streets of 26 feet, more CT Page 3295 or less, in length. The building itself is not affected by the taking. Three of the parking spaces located at the northeast corner of the subject property are eliminated by the taking, so that after the taking there will be 38 parking spaces remaining rather than the 41 spaces which existed before the taking.
The plaintiff called Eric R. Sjostrom, a qualified real estate appraiser, as an expert witness. He opined that continued use as an office building is the highest and best use of the subject property, and that the highest return on investment is to lease the maximum amount of space permitted for doctors' and dentists' offices. He used the market approach to estimate the value of the physical loss to the property and the income approach to estimate the effect of the restrictions placed on the property caused by the reduction of parking and to estimate the property value. Using three sales which he found comparable, Sjostrom concluded that the subject property had a fair market value of $19 per square foot. He estimated that the property contained 27,874 square feet before the take and 27,674 square feet after the take. He computed fair market value before the take at $529,606 and after the take at $525,426, a difference of $4,180. He estimated the value of 175 square feet over which the defendant took slope rights at $19 per square foot, producing a value of $3,325. He reduced that value by 10% for the slope rights and added the resulting loss of $333 to $4,180, giving a result for the physical value of land condemned of $4,513. He added $500 for loss of shrubs and other site improvements and estimated $5,013 in direct damages to the property. Under the Wethersfield zoning regulations, one parking space must be provided for each 150 square feet of space rented for medical or dental offices or for retail, or for each 250 square feet of space rented for general office use. The loss of three spaces could thus reduce the amount of space in a given area available for rent to doctors or dentists. Sjostrom opined that the loss of the three spaces resulted in the loss of 300 square feet which might have been rented for doctors' or dentists' use. Using comparable rentals, he calculated that space rents in Wethersfield at $18 per square foot for doctors' offices and at $11 per square foot for general office space. Using a before the taking potential of 2,500 CT Page 3296 square feet available for doctors' offices and 4,500 square feet available for general office use, he calculated net income of $67,331 which he capitalized at $673,000. Using an after take potential of 2,200 square feet available for doctors' offices and 4,800 square feet available for general office use, he calculated net income of $65,835 which he capitalized at $658,000. He added the difference of $15,000 to the direct damages to estimate damages at $20,000.
The defendant called Bruce C. Cowdrey, a qualified real estate appraiser, as an expert witness. He opined that the highest and best use of the property before and after the sale was continued use as developed and utilized. He used comparable sales to conclude that the subject property had a fair market value of $17 per square foot before and after the take. He calculated that 27,878 square feet before the take had a fair market value of $473,926 to which he added $200 for the value of 175 square feet of pavement, three yews and concrete steps. He estimated total value before the take at $474,150. Cowdrey concluded that the rights taken have no value because they replace depreciated improvements or blend in the grade. He calculated that the 27,660 square feet after the taking have a fair market value of $470,220. He estimated direct damages at $3,930. He concluded that the current mix of tenants requires 38 parking spaces, so that even with the loss of three spaces the site conforms to the parking requirements of the zoning regulations. He opined that the loss of three spaces can have a detrimental effect on value and he calculated the loss by estimating a potential loss of rent for the three spaces. He used a figure of $360 which he capitalized at $3,600. He added this amount to direct damages of $3,930 and concluded that total damages were $7,500.
The referee in an appeal from an award of damages for acquisition of property by eminent domain must reach his own conclusion of value by weighing the opinions of the appraisers and the claims of the parties in the light of all the evidence and the circumstances bearing on value and of his own knowledge of the elements affecting value. CT Page 3297
Having seeing the property and considered all of the evidence, and relying on my own knowledge of the elements establishing value, I have concluded that the damages sustained by the plaintiff were $9,950. Judgment may enter for the plaintiff for the further sum of $3,350 in addition to the sum of $6,600 which was deposited by the defendant, with interest on said further sum of $3,350 from the date of taking to the date of payment, together with costs and an allowance of $2,500 towards its appraisal fee.
George D. Stoughton State Trial Referee